## No. 32
## LEVINE v. STATE EX REL.
Ohio Supreme Court, No. 17361—June 13, 1922.
For full opinion see 105 OS., 288.

**ELECTIONS—(1) Marking ballots—Sec. 5069 GC. is mandatory and ink marked ballots are invalid. (2) Laws, to be directory, must clearly appear so.**

WANAMAKER, J.:
Epitomized Opinion.
Error to Lucas Court of Appeals.

Thomas C. Devine and W. H. Tucker, Jr., were the only contestants for the office of councilman in a Toledo ward. The returns made showed that there was a tie. One ballot had been marked with ink, before the name of Tucker, and had not been counted. He asked that the board of election count it in his favor, but it refused. He then brought mandamus to compel the board to count it in his favor. The court of appeals held that the ballot was legal, and should have been counted for Tucker. The Supreme Court decided:

1. That Secs. 5069 et seq GC., as to marking of a ballot by the voter, are clearly mandatory in terms and intention, and should be substantially followed by the voters and the election authorities. It reversed the decision of the court of appeals.

2. An act of the general assembly will not be regarded as directory or discretionary as to those upon whom it is intended to operate, unless such character clearly appears from the entire text of the act.

**Attorneys**—Solon T. Klotz, for plaintiff; W. B. Gregg, M. S. Dodd and F. M. Dotson, for defendant.

---

## No. 33
## CINCINNATI UN. DEPOT CO v. CINCINNATI (City)
Ohio Supreme Court, No. 17271—June 20, 1922
For full opinion see 105 OS., 311

**MUNICIPAL CORPORATIONS—Deposit to secure franchise performance—(1) Return of after revocation of ordinanhe, not a gift—(2) Rights under franchise and revoking ordinance construed.**

JONES, J.:
Epitomized Opinion.
Error to the Hamilton Court of Appeals

In 1910 and 1911 Cincinnati, by ordinances, granted to the above plaintiff a franchise for the construction of a Union Depot. The company was to commence within one year, and was also to deposit in the treasury of the city, $10,000, which was to become the property of the city at any time the franchise was forfeited. In 1913 the company brought suit to protect its franchise, and then the city by ordinance revoked it, alleging noncompliance. The revoking ordinance authorized the return of the deposit to the depot company. It then sought an injunction to restrain the city from making the forfeiture. Cross petitions filed by the city clerk and city treasurer each asking that the city be enjoined from paying back the money. Both the common pleas and appellate courts found in favor of the city, and declared the franchise void. The Supreme Court held:

1. That under the facts, the city council could waive its rights, and the return of the deposit was not a gift by the city. Also that the deposit had not become the property of the city, the ordinance reading that it should so become "if at any time the franchise is forfeited," which had never been done.

2. The depot company not having accepted the terms of the revoking act, it could not stand upon the original franchise and, at the same time, claim the return of the deposit. It was conceded by the parties that the franchise had ceased to exist, and that the question in the case now is, "Who is entitled to the money?" The depot company could have dismissed its original petition and elected to stand upon its in effect legal acceptance of the provisions of the revoking ordinance. But the city having attempted to enjoin the return of the money, the company may disclaim its rights to relief under the claimed franchise, and accept the provisions of the revoking ordinance returning the deposit. This may be done, either by an express acceptance or by such disclaimer made upon the trial. This was, in fact, done in the trial court.

**Attorneys**—Dinsmore, Shohl & Sawyer, Scanlan & Carney and Harry T. Klein, for Depot Co.; Saul Zielonka, Solicitor, and F. K. Bowman, Asst., for City.

---

## No. 34
## CINCINNATI (City) v. ROETTINGER
Ohio Supreme Court, No. 17440—May 16, 1922.
For full opinion see 105 OS., 145.

**MUNICIPAL CORPORATION—(1) Waterworks—Ordinance conflicting with state law—Sec. 3959 GC. limits disposition of surplus revenues. (2) Municipalities have only limited control over rates. (3) Sec. 3979 GC. makes transfer to General Fund to cover deficiencies, unauthorized—Home Rule provisions of Art. XVLLL Const. inapplicable. (4) City Charter adopts state laws. (5) Local legislation must not conflict with state laws.**

MARSHALL, C. J.;
Epitomized Opinion.
Error to Hamilton Court of Appeals.

Section 3959 GC. provides that surplus funds derived from city water rents may be applied only to repairs, enlargement or extensions of the works, to the payment of interest on construction or for creation of a sinking fund to liquidate the debt. The city passed an ordinance defining a surplus, and providing that it had to be transferred to its general fund, and used to pay certain charges and expenses of the city.

This action was brought to enjoin the transfer of the funds. The Supreme Court sustained the court below and held:

1. That the City had no power over the surplus beyond that expressly granted in the statutes. That the taxing power is in the legislature, and while charges for service and conveniences rendered by a municipality to its inhabitants are not taxes, yet where the charge is in excess of the cost, the rule does not prevail. A water rate deliberately made to make up a deficiency in municipal expenses, which cannot be made within the limits of taxation, otherwise prescribed, is to that extent an effort to levy taxes, not authorized by Sec. 3959 GC.

2. By Secs. 4, 5 and 6, Art. XVIII of the Constitution, municipalities have been vested with power to acquire, construct, own, lease, and operate public utilities, but this does not give them full control over rates and charges for a municipally owned public utility. But this authority to exercise local self-government does not operate to take away from the legislature its power to place limitations upon taxation.

3. Sec. 3799 GC. limits the power of municipalities to transfer funds from the waterworks to the general fund, except those raised by taxation, and then not until the object of the fund has been accomplished, and this limitation is not affected by the Home Rule provisions of Art. XVIII of the Constitution.

4. Cincinnati being a charter city, and because its charter adopts and continues in force the general and all local or special laws enacted by the legislature relating to government of cities and defining and limiting their powers and duties, will be construed as a reaffirmation of all such general and special laws enacted prior to the date of the charter, and also all special laws theretofore passed by the general assembly relating to such city.

Any municipal legislation adopted by such city otherwise than by amendment of such charter, in conflict with any of the general laws of the state, pertaining to municipalities or special laws pertaining to such city, will be invalid.

**Attorneys**—Saul Zielonka and Landon L. Forchheimer, solicitors, for the city; Roettinger & Street and Charles M. Leslie for Roettinger.